UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DAVID JOAO MBELO ,

                     Petitioner,

          v.

TODD BLANCHE, *et al.*,

                     Respondents.

Case No. C26-2055-SKV

ORDER GRANTING IN PART
PETITION FOR WRIT OF HABEAS
CORPUS

## I.    INTRODUCTION

Petitioner David Joao Mbelo is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington.  He filed this verified 28 U.S.C. § 2241 habeas action through counsel, challenging his May 28, 2026, redetention as unlawful under the Fifth Amendment.  *See generally* Dkt. 1. Government Respondents filed a return, Dkt. 5, along with sworn declaration from U.S. Department of Homeland Security ("DHS") Deportation Officer Nhat Truong, Dkt. 6, and an unsworn declaration from their counsel, Lawrence Van Daley, Dkt. 7.  Petitioner filed a traverse in reply, Dkt. 8.

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 1

Having considered the parties' submissions and the governing law, the Court GRANTS in part the petition and ORDERS Petitioner to be released from immigration detention within twenty-four (24) hours for the reasons set forth below.

## II.    BACKGROUND

Petitioner is a native and citizen of Angola, who first entered the United States on or about December 8, 2023, near Otay Mesa, California.  Truong Decl., ¶ 4.  He was encountered by border patrol on December 13, 2023, near San Diego, California, and taken into custody.  *Id.* ¶ 5.  He was released into the United States the same day on an Order of Release on Recognizance ("OREC"), issued "[i]n accordance with section 236 of the Immigration and Nationality Act and the applicable provisions of Title 8 of the Code of Federal Regulations[.]" *Id.*; *see* Dkt. 1-7.  He was also issued a Notice to Appear ("NTA"), charging him with removability under the INA and requiring his appearance before an immigration judge.  Truong Decl., ¶ 6; *see* Van Daley Decl., ¶ 2, Ex. 1 at 2.

While released, Petitioner filed an application for asylum and withholding of removal with the immigration court on January 22, 2024, which appears to remain pending.  Truong Decl., ¶ 7; *see* Van Daley Decl., ¶ 2, Ex. 3 at 3.

On September 26, 2025, and again on March 14, 2026, Petitioner was arrested and charged with driving with a suspended driver's license.  Truong Decl., ¶¶ 9-10.  As of June 26, 2026, those charges remain pending.  *Id.*

On May 28, 2026, ICE arrested Petitioner after he showed up for a pre-scheduled appointment at the Seattle Enforcement and Removal Operations ("ERO") office.  *Id.* ¶ 12. According to Officer Truong, ERO "found out" about Petitioner's arrests and thereafter

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 2

approved his immigration detention because of them. *Id.* Petitioner was transferred to the NWIPC, where he remains detained. *Id.*

After filing his petition, Petitioner had an immigration hearing on June 25, 2026, the results of which are unknown from the record. *Id.* ¶ 15.

### III.    LEGAL STANDARD

Federal courts have authority to grant writs of habeas corpus to individuals detained in "violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Yildirim v. Hermosillo*, No. C25-2696-KKE, 2026 WL 111358, at *1 (W.D. Wash. Jan. 15, 2026). "In habeas cases, federal courts have broad discretion in conditioning a judgment granting relief," and may dispose of habeas matters "as law and justice require." *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013); 28 U.S.C. § 2243.

### IV.    DISCUSSION

Petitioner brings one claim, which contends that his redetention without written notice and a pre-deprivation hearing, after having been conditionally released to live in the United States, violates his due process rights under the Fifth Amendment. Dkt. 1 at 13. Respondents vaguely suggest that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b), *see* Dkt. 5 at 2-4, and also argue that his individual circumstances did not require pre-deprivation process, *id.* at 5-8.

#### A.    Detention Authority

Respondents' return memorandum includes several pages discussing the mandatory detention scheme under 8 U.S.C. § 1225(b), suggesting to the Court they believe it authorizes Petitioner's current detention. *See id.* at 2-4. Officer Truong also asserts, albeit summarily, that

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 3

Petitioner "was detained per INA § 235" when he was arrested on May 28, 2026.[1]  Truong Decl., ¶ 13.  Thus, although the Court recognizes Petitioner's claim is constitutional, it will briefly address Respondents' statutory argument.

Respondents rely on *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 502 (5th Cir. 2026), *Avila v. Bondi*, 170 F.4th 1128, 1135-36 (8th Cir. 2026), and the Board of Immigration Appeals' decision in *Matter of Q. Li*, 29 I. & N. Dec. 66, 68-70 (BIA 2025), to argue that noncitizens who are present in the United States are applicants for admission who are "seeking admission" and thus, subject to mandatory detention under § 1225(b), "regardless of whether that person is actively engaged in admissions procedures when detained."  Dkt. 5 at 3.  These cited authorities are not binding on this Court.  Further, although the Ninth Circuit has not yet ruled on this issue, courts in this District, and across the country, continue to reject the argument, finding the government's interpretation of the relevant statutory schemes inconsistent with their own.  *See Singh v. Noem*, C26-00766-TLF, 2026 WL 1045507, at *2 (W.D. Wash. April 17, 2026); *Rodriguez v. Bostock*, 802 F. Supp. 3d 1297, 1304 n.3 (W.D. Wash. 2025) (collecting cases); *see also Barco Mercado v. Francis*, 811 F. Supp. 3d 487, 494 (S.D.N.Y. 2025) ("[T]he administration's new position that all noncitizens who came into the United States illegally, but since have been living in the United States, must be detained until their removal proceedings are completed—has been challenged in at least 362 cases in federal district courts. The challengers have prevailed, either on a preliminary or final basis, in 350 of those cases decided by over 160 different judges sitting in about fifty different courts spread across the United States.").

Moreover, the record shows the Government has treated Petitioner as subject to discretionary detention under § 1226(a) since his arrival in the United States in 2023.  *See Del*

---

[1] INA § 235 is codified at 8 U.S.C. § 1225.

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 4

*Valle Castillo v. Wamsley*, C25-02054-TMC, 2025 WL 3524932, at *5 (W.D. Wash. Nov. 26, 2025)  ("Particularly relevant in each case is the government's treatment of the petitioner seeking habeas relief: where a petitioner has been 'treated by Respondents as subject to discretionary detention under [§] 1226, rather than mandatory detention under [§] 1225,' the former is more likely to apply.") (quoting *Romero v. Hyde*, 795 F. Supp. 3d 271, 281 (D. Mass. 2025)).  Here, Petitioner was released from detention shortly after being encountered by border patrol on an OREC that was issued in accordance with INA § 236, which is codified at 8 U.S.C. § 1226.  Van Daley Decl., ¶ 2, Ex. 2 at 2.  *See Martinez v. Hyde*, 792 F. Supp. 3d 211, 215 (D. Mass. 2025) (finding OREC issued under INA § 236 "explicitly premise[d]" release under § 1226(a)).  The warrant and notice of custody determination served on Petitioner after his most recent arrest were also authorized and issued under INA § 236, *see* Van Daley Decl., ¶ 2, Exs. 3, 4, which similarly suggests the Government contemplated Petitioner's detention to be governed by § 1226(a).  *See Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1112 (9th Cir. 2007) (finding Warrant and Notice of Custody Determination issued under INA § 236 supported finding noncitizen's release falling under § 1226(a)).  Nothing in the evidentiary record supports finding the Government has treated Petitioner's detention as mandatory or otherwise governed under § 1225(b).  Accordingly, the Court finds Petitioner's detention falls under § 1226(a).

### B.   *Mathews* and Due Process

The Fifth Amendment forbids the government from depriving any person of "life, liberty, or property, without due process of law."  U.S. Const. amend. V.  "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 522 (1965)).  Due process is "flexible and calls for such procedural protections as the

particular situation demands." *Id*. at 334 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). It "applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (citations omitted).

The Supreme Court, in *Mathews*, established a three-part test for determining whether a particular government action comports with due process. The *Mathews* test balances the following factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

In *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1211 (9th Cir. 2022), the Ninth Circuit assumed without deciding that the *Mathews* test applies in the immigration detention context, and courts in this District employ the framework in cases challenging redetention under circumstances like those in this case. *See, e.g., Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025) (citing *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 n.4 (W.D. Wash 2025) (collecting cases)).

Here, both parties apply the *Mathews* framework to Petitioner's due process claim, *see* Dkts. 1, ¶¶ 39-48, 5 at 5-8, and the Court agrees it is applicable here.

The first *Mathews* factor considers "the private interest that will be affected by the official action[.]" *Mathews*, 424 U.S. at 335. The Supreme Court has recognized that "[f]reedom from bodily restraint has always been at the core of the liberty protected by the Due

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 6

Process Clause from arbitrary governmental action*." Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); *see also Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (acknowledging the interest in not being detained "by one's own government" to be "the most elemental of liberty interests").

Respondents acknowledge Petitioner's liberty interest but suggest it was lessened because his OREC was "provisional" and "granted solely because of bed overcrowding . . . rather than from any individualized determination" of whether Petitioner posed a flight risk or danger to the community. Dkt. 5 at 6. Thus, according to Respondents, "[w]hile [Petitioner's] interest is real, its weight is informed by the limited and administrative nature of the release." *Id.* The Court is unpersuaded by this argument.

Respondents do not cite any caselaw for support or explain what they mean by Petitioner's OREC being "provisional." Dkt. 5 at 6. Every OREC is provisional in the sense that it requires noncitizens to abide with its conditions or run the risk of revocation. However, the fact that Petitioner's release was conditioned on compliance does not, on its own, suggest his liberty interest in remaining free was not entitled to due process. *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. Mar. 3, 2025). ("The Supreme Court has repeatedly recognized that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty.").

Further, the underlying motivation behind ICE's decision to release Petitioner is not relevant at this stage in the *Mathews* analysis, which is focused not on the Government's conduct, but rather the liberty interest impacted by it. Whether Petitioner was released because of "bed overcrowding" or for any other reason, the fact remains that DHS released Petitioner into the United States, where he remained free to live for over two years. That Petitioner was released due to "administrative" reasons and without DHS conducting an individualized

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 7

determination of flight risk or danger is only relevant to the extent that it calls into question the Government's compliance with federal regulations.[2] Dkt. 5 at 6. The Court does not find Petitioner has a reduced liberty interest because the Government potentially failed to follow its own regulations in 2023.

Released individuals have the opportunity to "form the [] enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. Petitioner was released in 2023 and spent the vast majority of his time in the United States out of custody, "buil[ding] a strong network of support in Washington State." Dkt. 1 at 7. Petitioner was only able to build that network of support while free. The Court finds the first *Mathews* factor thus weighs in Petitioner's favor.

The second *Mathews* factor examines "the risk of an erroneous deprivation of [the Petitioner's private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards[.]" *Mathews*, 424 U.S. at 335. Courts find that the risk of an erroneous deprivation is high for noncitizens who have been conditionally released but are then redetained without first reassessing whether the noncitizen poses a risk of flight or danger to the community. *E.A. T.-B.*, 795 F. Supp. 3d at 1323 (collecting cases); *Doe*, 787 F. Supp. 3d at 1094 (""[G]iven that Petitioner was previously found to not be a danger or risk of flight...the risk of erroneous deprivation remains high.").

Here, Respondents do not deny that Petitioner did not receive any pre-deprivation process, but assert that his pending criminal charges "constitute[] an objective failure to comply with the conditions of his release." Dkt. 5 at 6. Petitioner's criminal arrests, according to

---

[2] Applicable federal regulations dictate that, before authorizing a noncitizen's conditional release, an immigration officer must first determine that such "release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding." *Ledesma Gonzalez v. Bostock*, 808 F. Supp. 3d 1189, 1198 (W.D. Wash. 2025) (quoting 8 C.F.R. § 236.1(c)(8)).

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 8

Respondents, "are readily verifiable facts, not subjective judgments, which significantly reduces the risk that the revocation decision was based on erroneous information." *Id.*

While Petitioner's pending criminal charges ultimately may provide a basis for the Government to revoke Petitioner's OREC, the Government remained "obligat[ed] to effectuate the detention in a manner that comports with due process." *Ramirez Tesara*, 800 F. Supp. 3d at 1137. Providing effectively no pre-deprivation process removed any opportunity for Petitioner to challenge the factual bases for the revocation of his liberty interest. That Petitioner's alleged violations occurred months before they were acted upon, and that they continue to remain pending (*i.e.*, Petitioner is presumed innocent), demonstrate there was value in providing additional procedural safeguards prior to taking him into custody.

The only other articulated basis for Petitioner's arrest and detention is the Government's erroneous classification of Petitioner's detention under § 1225(b). As explained above, Petitioner is not subject to mandatory detention, but rather the discretionary detention scheme under § 1226(a).

In sum, Petitioner's circumstances demonstrate there was a high risk that his liberty interest would be erroneously deprived and that additional procedural safeguards, such as pre-deprivation notice and hearing, would have been valuable to ensure such deprivation did not occur. Accordingly, the second *Mathews* factor also favors Petitioner.

The third *Mathews* factor contemplates "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. Respondents argue the Government has an interest in enforcing conditions of release and protecting public safety. Dkt. 5 at 7. Respondents further argue that "requiring additional pre-deprivation process . . . would

impose meaningful administrative burdens and could delay the government's ability to respond promptly when changed circumstances arrive." *Id.*

These interests would not have been hindered by providing Petitioner with individualized pre-deprivation process. Custody and bond hearings already occur regularly within the existing immigration system, and courts have repeatedly found the incremental administrative burden of such hearings modest relative to the risk and consequences of erroneous detention. *See, e.g., E.A. T. B.*, 795 F. Supp. 3d at 1324; *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re arrest Ortega at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."). As for delaying the Government's ability to enforce conditions of release, the Court observes that DHS was not even aware of Petitioner's pending charges until months later—after he showed up to a pre-scheduled ERO appointment, on his own volition, and after "routine system queries" discovered Petitioner's "interactions with law enforcement." *See* Van Daley Decl., ¶ 2, Ex. 3 at 3. It is therefore unpersuasive to suggest that providing pre-deprivation process would have undermined the Government's interest in prompt enforcement when there is no evidence the Government was aware of, or took action on, Petitioner's pending criminal charges until he appeared for his appointment and ERO learned of the charges. The third *Mathews* factor favors Petitioner.

In sum, all three *Mathews* factors weigh in Petitioner's favor. Respondents' redetention of Petitioner without providing him "an opportunity to be heard at a meaningful time and in a meaningful manner[,]" *Mathews*, 424 U.S. at 333, violates the due process protections afforded him by the Constitution. As Petitioner has established that he is in custody in violation of the Constitution, he is entitled to habeas relief under § 2241. Petitioner must therefore be released from custody.

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 10

**C.      Remaining Relief**

Petitioner also seeks a court order "immediately and permanently enjoining [his] re-detention during the pendency of [his] removal proceedings absent written notice and a hearing prior to re-detention where Respondents must prove by clear and convincing evidence that [he] is a flight risk or danger to the community and that no alternatives to detention would mitigate those risks."  Dkt. 1 at 14.

While the record shows Petitioner was redetained without adequate process, it does not necessarily follow that he will again face the risk of irreparable injury after he is released pursuant to this Court's Order.  A party "seeking a permanent injunction must demonstrate (1) that he has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."  *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2008).  Petitioner does not develop an adequate factual record or engage with the *eBay* factors in his petition.  His request is therefore denied.

## V.      CONCLUSION

For the foregoing reasons, the Court GRANTS in part the habeas petition, Dkt. 1, and ORDERS:

1)  Petitioner shall be RELEASED from immigration detention within **twenty-four (24) hours** under the conditions in effect at the time of his redetention.

2)  Respondents shall file a certification with the Court within **forty-eight (48) hours** that Petitioner has been released.

3)  Petitioner's request for injunctive relief is DENIED without prejudice.

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 11

4)    Any fee petition shall be filed within the deadlines set by the EAJA, 28 U.S.C. § 2412.

Dated this 14th day of July, 2026.

S. KATE VAUGHAN
United States Magistrate Judge

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 12